IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| John R. Mirlisena, *et al.*, | : | Case No. 1:15-cv-00058 |
| Plaintiffs | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Nirav Babu, *et al.*, | : | Order Denying Pendum LLC's Motion for |
| | : | Summary Judgment and Granting Nirav |
| | : | Babu's Motion for Summary Judgment |
| Defendants. | : | |

This matter is before the Court on Defendant Pendum LLC's Motion for Summary Judgment (Doc. 146) and Crossclaim Defendant Nirav Babu's Motion for Summary Judgment as to Remaining Crossclaims (Doc. 147). For the reasons that follow, Pendum LLC's Motion will be DENIED, and Babu's Motion will be GRANTED.

**I.    Background**

This case involves the unusual circumstance of a business receiving and retaining more than one million dollars from an entity with which it had no prior business dealings and suing the individual who transferred the funds to it. Plaintiffs, whose bank account was used to wire the funds, assert the receipt and retention of its money constitutes unjust enrichment—a claim that after review of the record evidence, the Court finds must proceed to trial. The business that received the money, Pendum LLC, asserts claims for tortious interference with contract and tortious interference with a business relationship under Ohio law against the individual who wired the funds, Crossclaim Defendant Babu. Those claims cannot withstand summary judgment. The reasoning for the Court's conclusions is set forth below.

1

### A. Facts[1]

#### 1. $1.1 Million Dollar Transfer

On February 10, 2014, Defendant and Crossclaim Plaintiff Pendum LLC,[2] a limited liability corporation in the business of selling, maintaining, and servicing ATMs, received a payment of $1,145,630.50[3] from Great Tax, LLP's bank account at TAB Bank.[4] (Mirlisena

---

[1] As required by Judge Dlott's Standing Order, in support of its Motion for Summary Judgment, Pendum submitted a Proposed Statement of Undisputed Facts in support of its Motion for Summary Judgment (Doc. 146-1), and Plaintiffs have responded by admitting or denying those facts in their Responses to Pendum's Proposed Undisputed Facts and Plaintiffs' Statement of Proposed Disputed Issues of Material Fact (Doc. 158-1). The Court will only cite to the record for facts that have not been admitted as undisputed and largely relies upon the two parties' facts in this section.

In support of its Motion for Summary Judgment, Babu also filed a Statement of Proposed Undisputed Fact (Doc. 147-2), to which Pendum has responded by admitting or denying those facts in its Response to Crossclaim Defendant Nirav Babu's Statement of Proposed Undisputed Facts (Doc. 157-1). Because the facts for both motions overlap, the Court will combine its fact sections here, but notes that its legal analysis is separated by party and the joint facts for which it relies upon are not dispositive of Babu's motion. As Babu's Motion for Summary Judgment is being granted on the ground that Pendum has failed to come forward with sufficient evidence to support its claims, this approach is appropriate.

[2] In 2015, Pendum was acquired by Burroughs Control Access Services, Inc. ("Burroughs"). (Hauck Dep., Doc. 108 at PageID 960, 968–70.)

[3] For ease of reference, the Court will refer to this as "$1.1 million."

[4] Setting the stage for many disputes of fact, there is conflicting evidence about whether the $1.1 million was wired from Great Tax, LLC, GTS Financial, or GTP Financial, LLC. In its Statement of Proposed Undisputed Facts, Pendum relies upon testimony of Catherine Hauck, the Director of Sales Operations with Burroughs in which she testified that the money was received from "GTS Financial" to support its position that the money was transferred from *GTP's* bank account. (Hauck Dep., Doc. 108 at PageID 1009.) The Court can only surmise that Pendum interpreted Hauck's testimony to mean "GTP Financial, LLP." Yet, it did so without acknowledging or recognizing the discrepancy between GTP Financial, LLC and GTS Financial, which the Court finds both confusing and concerning. Through its review of the evidence, the Court located testimony from Ed Boyd, the Vice President of Client Services of Burroughs, in which he testified that the payment came from "GTP Financial." (Boyd Dep., Doc. 154 at PageID 3130, 3296.) Clearly, there is a dispute of fact over from which entity the $1.1 million was wired.

Dec., Doc. 156-2 at PageID 3712.) Pendum had no business relationship with the entity from which the funds were received. (Hauck Dep., Doc. 108 at PageID 1007–08.[5])

## 2. Relevant Parties

The $1.1 million was wired to Pendum from Great Tax, LLC's bank account by Crossclaim Defendant Nirav Babu. (Mirlisena Dec., Doc. 156-2 at PageID 3712.) Although currently not working, Babu is an attorney who previously was involved in the tax refund business and had an interest in a software company called Refunds Plus, LLC. (Babu Dep., Doc. 143 at PageID 2053.)

In late 2013 and early 2014, Babu entered into a business agreement with Plaintiffs John Mirlisena, Jr. and two tax service businesses Mirlisena owns, GTP Financial, LLC ("GTP"), and Great Tax, LLC ("GT"). (Mirlisena Dec., Doc. 156-2 at PageID 3710.) GTP provides tax refund anticipation loans (called "RALs" in the industry). GT provides tax preparer services, and GTP is the company through which GT's funds were used to conduct GT's business, such as paying GT's vendors and refund loans to qualified taxpayers. (*Id*. at PageID 3710–11.) Babu agreed to provide GT and GTP with operating capital and funds for working capital to issue tax rebates and to give RALs to taxpayers. (*Id*. at PageID 3710.)

Babu, Plaintiffs, and Pendum had ties to an individual in the tax rebate industry named Fesum Ogbazion, a former defendant to this action who is permanently enjoined from operating

---

[5] As previously noted, Hauck refers to the entity from which the funds were received as "GTS Financial." Regardless, there is no dispute Pendum had no business relationship with the entity that transferred the funds, be it GTS Financial, GTP Financial, LLC, or Great Tax, LLC.

3

businesses related to the preparation of tax returns.[6] Babu previously served as in-house counsel and a franchisee of one of Ogbazion's companies, ITS. (Babu Dep., Doc. 143 at PageID 2053.)

### 2. Plaintiffs' Business Relationship with Babu

Babu lent approximately $5 million dollars to GTP and GT as "co-borrowers." (Mirlisena Dep., Doc. 135 at PageID 1311–12.) Babu supplied funds to GTP and GT by depositing them into accounts at TAB Bank. (*Id*. at PageID 1318.) On January 2, 2014, Babu entered into Deposit Account Control Agreements with TAB Bank and each GTP and GT. (*Id*. at PageID 1319–21; Doc. 135-1 at PageID 1488; Doc. 135-2 at PageID 1499.) Pursuant to the Deposit Account Control Agreements:

> The Company[7] authorizes and directs the Bank to comply, and the Bank agrees to comply, with instructions given by the Lender[8] in accordance with this Agreement

---

[6] In 2012, the Department of Justice brought suit in the United States District Court for the Southern District of Ohio against Ogbazion and three companies he solely owned: ITS, TCA Financial, LLC, and Tax Tree, LLC. Ogbazion and those businesses have been permanently enjoined from operating or being involved in any way, any business relating to the preparation of tax returns due to repeated fraudulent and deceptive conduct. *United States v. ITS Financial, LLC*, No. 3:12-cv-95, 2013 WL 5947222, at *1 (S.D. Ohio Nov. 6, 2013), affirmed in part, reversed in part, and remanded, 592 Fed. App'x 387 (6th Cir. 2014). On appeal, the Sixth Circuit upheld the district court's injunction and findings except as to Tax Tree, LLC. The Court reversed the district court's finding that Tax Tree, LLC violated 26 U.S.C. § 6695(f) and remanded to the district court to determine whether there was any other basis on which to apply the injunction to Tax Tree, LLC. The Court takes judicial notice of the proceedings in the *ITS* case. *See* Fed. R. Evid. 201(c)(1); *RQSI Global Asset Allocation Master Fund, Ltd. v. Apercu Int'l PR LLC*, 683 Fed. App'x 497, 509 (6th Cir. Mar. 27, 2017) (taking judicial notice of judicial proceedings where a judgment was entered and the district court imposed a permanent injunction).

GT acquired some of ITS's assets. (Mirlisena Dep., Doc. 135 at PageID 1295.) Mirlisena and Babu decided to separate the functions of the former ITS business; GT would act as franchisor and Babu would own a company, Refunds Plus, LLC, to process tax refunds. (Babu Dep., Doc. 143 at PageID 2056, 2060.)

[7] "Company" is defined in one Deposit Control Agreement as "GTP FINANCIAL, LLC, an Ohio limited liability company also known as GREAT TAX PRODUCTS" (Doc. 135-1 at PageID 1488) and the other as "Great Tax LLC, LLC, [sic] an Ohio limited liability." (Doc. 135-2 at PageID 1499).

directing the disposition of funds from time to time in any Account or as to any other matters relating to any Account or any of the other Account Collateral without further consent by the Company. The Bank shall be entitled to rely and act upon any instructions received by the Bank from the Lender, even if such instructions shall be contrary to any instructions received by the Bank from the Company.

(Doc. 135-1 at PageID 1489; 135-2 at PageID 1500.)

### 3. Pendum's Contract for ATM Sale with EZ Tax/Ogbazion

On August 30, 2013, Pendum entered into an Equipment Sale Agreement for 300 ATMs for a sale price of $2,699,700[9] with "ez Tax Cash,"[10] with Ogbazion as the signatory. (Hauck Dep., Doc. 161-2 at PageID 3812.) EZ Tax did not pay Pendum the $2.7 million; rather, payments came in from various sources. (Boyd Dep., Doc. 154 at PageID 3299.) A fifty percent down payment for the ATMs was made by an individual named Charles Verghese[11] with his personal credit card. (*Id*. at PageID 3240–41.) However, the balance was not paid near the end of 2013, and it became designated as a delinquent account. Pendum had released half of the ATMs but held back the remainder until payment was received. (Hauck Dep., Doc. 108 at PageID 1000–01.) Pendum agreed that Babu and Verghese could make payments from their credit cards towards the balance, although it did not know who these individuals were. (*Id*. at PageID 1004–05.) The remainder of the balance, $1.1 million dollars, was due on February 7, 2014. (*Id*. at PageID 1007.) On February 10, 2014, the exact dollar amount Pendum was

---

[8] "Lender" is defined in both Deposit Control Agreements as "NIRAV BABU, a Maryland resident." (*Id*.)

[9] For ease of reference, the Court will refer to this as $2.7 million.

[10] "ez Tax Cash" is also referred to as EZ Tax Cash, LLC, ("EZ Tax") a former defendant to this action who was dismissed on June 30, 2016. (Doc. 105.)

[11] Verghese is a former defendant to this action who was dismissed by Plaintiffs on June 14, 2016. (Doc. 102.)

expecting was received from GTS, although no one at Pendum was aware of what GTS was. (*Id.* at PageID 1007–09.) That payment came from Babu.

**B. Procedural History**

This action originated in the Ohio Court of Common Pleas for Hamilton County on May 30, 2014 and was removed to federal court on January 28, 2015. In the Corrected Fourth Amended Complaint, Plaintiffs John R. Mirlisena, Jr, Great Tax LLC, and GTP Financial LLC brought claims against Charles Verghese, Refunds Plus, LLC c/o Nirav Babu, Pendum, LLC, Fesum Ogbazion, EZ Tax Cash, LLC c/o Fesum Ogbazion, and Nirav Babu. (Doc. 90.) Babu brought a third-party claim against Falcon Tax Products LLC. (*Id.*)

On June 14, 2016, Plaintiffs dismissed with prejudice all claims brought in this action against Verghese, Refunds Plus, LLC, and Babu, and Babu dismissed his counterclaims against Falcon Tax Products, LLC. (Doc. 102.) On June 30, 2016, Plaintiffs dismissed without prejudice their claims against Defendants Ogbazion and EZ Tax Cash, LLC, leaving Pendum, LLC as the sole Defendant. (Doc. 105.)

On December 19, 2016, the Court allowed Defendant Pendum to file a Fourth Amended Complaint for Economic, Compensatory and Punitive Damages and Injunctive Relief with Crossclaims to be filed against Babu. (Doc. 123, 124). On February 2, 2017, Babu moved for judgment on the pleadings. (Doc. 127.) On April 5, 2017, the Court granted in part and denied in part that motion. (Doc. 130.)

Now, only Plaintiffs' unjust enrichment claim against Pendum and Pendum's claims for tortious interference with contract and tortious interference with a business relationship against Babu remain. On July 24, 2017, Pendum and Babu each filed a Motion for Summary Judgment, both of which are opposed. (Docs. 146, 147, 157, 158, 159, 160.)

## II. Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at

248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law." *In re Morgeson,* 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007).

### III. Analysis

#### A. Pendum's Motion for Summary Judgment

Pendum moves for summary judgment on Plaintiffs' unjust enrichment claim, the only remaining claim against it. To succeed on this claim, Plaintiffs most prove "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Rorig v. Thiemann*, No. 1:05cv801, 2007 WL 2462653, at *7 (S.D. Ohio Aug. 27, 2007) (citing *Hambelton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298, 1302 (1984)). Only the third element of this claim is in dispute. Pendum moves for summary judgment on five grounds, but none establish summary judgment is appropriate.

##### 1. Ownership of the Funds

First, Pendum argues that the $1.1 million at issue belongs to *Babu*, not Plaintiffs, rendering the third element unmet. Pendum asserts that Babu withdrew *his own money* from Plaintiffs' account to pay a debt owed to Pendum. But the evidence supporting this position is disputed. Pendum relies upon Mirlisena's testimony that Babu told him that he was taking money Mirlisena had borrowed and rather than pay back his lender, he was going "to put that

8

money in ATMs." (Mirlisena Dep., Doc. 135 at PageID 1360–62.) Plaintiffs argue this testimony is taken out of context. In a declaration, Mirlisena attests that the testimony upon which Pendum relies refers to a company named AmeriCom and had nothing to do with the Pendum transaction.[12] (Mirlisena Dec., Doc. 156-2 at PageID 3713; *see also* Mirlisena Dep., Doc. 135 at PageID 1356.) Mirlisena also attests that he was not aware of the Pendum transaction. (Mirlisena Dec., Doc. 156-2 at PageID 3712.)

Pendum also argues that Babu was permitted to withdraw funds from the TAB Bank accounts to pay back capital providers, and by wiring the funds to Pendum directly, he merely took a "shortcut." In support of this position, Pendum also relies upon a text message exchange between Babu and Jill Kollars, an accountant for GT and GTP, as evidence that both individuals understood the wire transfer to be a withdrawal of Babu's capital provider funds. Kollars was responsible for monitoring the TAB bank accounts. She texted Babu the date the $1.1 million was withdrawn, asking: "Who is the 1,145,630.50 wire to" and Babu responded, "Cap provider." (Babu Dep., Doc. 143 at PageID 2089; Doc. 143-4 at PageID 2272 (dates, times, and phone numbers omitted).) Kollars asked, "Which one" and Babu responded "Ral/rebate." (Doc. 143-4 at PageID 2272.) Kollars stated, "You are the only one that has put money in on gtp books," and Babu stated, "Well it's all from me" and "But I get it from someone else." (*Id.*) Pendum responds that it is immaterial that Babu took a "shortcut" to transfer his capital provider funds directly to any party that he chooses.

Mirlisena asserts in an affidavit that Babu's authority was limited to directing funds for the disposition of GT's funds exclusively for the purposes of conducting GT's business and that Babu "knew and agreed" that the money in the TAB Bank accounts was to be used exclusively

---

[12] However, Mirlisena's declaration cites PageID 1356–59 for the AmeriCom testimony, not PageID 1360–62.

9

for conducting GT's business and funds to those accounts were owned by GT. (Mirlisena Dec., Doc. 156-2 at PageID 3711.) He asserts that the money in the TAB Bank accounts, including the $1.1 million wire to Pendum, belonged to Plaintiffs, not Babu, and was to be used exclusively to conduct GT's business. (*Id*.) In his deposition, Mirlisena testified that the payment to Pendum was "unauthorized." (Mirlisena Dep., Doc. 135 at PageID 1464.)

The evidence in this case is obviously conflicting. There are significant factual questions as to whether Babu "owned" the funds in the TAB Bank accounts and what Babu's authority was with respect to dispersing those funds. These material disputes of fact preclude summary judgment for Pendum.

### 2. "Innocent Party" Theory

Second, alternatively, Pendum argues that if Babu did not have authorization to withdraw the $1.1 million, the Court should conclude Pendum is an innocent party to the alleged fraud perpetrated by Babu and GTP. Pendum argues Plaintiffs should be considered first at fault because they gave Babu access to the TAB Bank account without properly monitoring his activities.

In support of its position, Pendum cites *Ed Stinn Chevrolet, Inc. v. National City Bank* for the proposition that where two innocent parties suffer from fraud, justice requires that the loss be borne by the party first at fault who puts into operation the power which resulted in the fraud. 28 Ohio St. 3d 221, 229, 503 N.E.2d 524, 532 (1986) (citing *Hillside Dairy Co. v. Cleveland Trust Co.*, 142 Ohio St. 507, 53 N.E.2d 499 (1944) (pre-Uniform Commercial Code case)). *Ed Stinn* is readily distinguishable as it is not an unjust enrichment case and involves the interpretation of the Uniform Commercial Code, which is not at issue here. The Ohio Supreme Court was presented with the issue of which of two innocent parties should bear the loss of an

embezzlement check-forger scheme, the thief's employer or the thief's bank. The Court concluded that "[i]n an action between the customer and the payor bank, the bank will prevail because the UCC view is that the employer should bear the losses (of such a forged endorsement) which actually results from its employment of a cheating worker." *Id.* at 531, 228 (emphasis removed). The Court is unclear as to why it should rely upon this authority for a defense to unjust enrichment, and Pendum has cited no authority in which this principle was applied in similar circumstances.

Furthermore, Plaintiffs draw the Court's attention to Sixth Circuit case law that states that under Ohio law, there is no requirement that the defendant act improperly to support a claim for unjust enrichment. *Reisenfeld & Co. v. Network Group, Inc*., 277 F.3d 856, 860–61 (6th Cir. 2002) (reversing district court on its holding that appellant was precluded from seeking payment under a quasi-contract theory merely because there was no allegation that the appellee acted improperly). Although Pendum argues that the *Reisenfeld* case is inapplicable, as the court had no facts to suggest that one party was first at fault or put into operation the power that resulted in the fraud, the Court finds the improper element to be similar to the "innocent third party" theory advanced by Pendum and the most relevant case law cited by either party on this issue.

Furthermore, even if the Court were to adopt Pendum's innocent party theory, which it does not, there are legitimate factual disputes which would preclude the Court from finding Pendum to be such an innocent party.

### 3. *In Pari Delicto* and Unclean Hands

Pendum alternatively argues that the equitable defenses of *in pari delicto* and unclean hands bar Plaintiffs' claims. The defense of *in pari delicto* refers to the Plaintiffs' participation in the same wrongdoing as the defendant, whereas the defense of unclean hands refers to the

11

Plaintiffs' wrongdoing against a third party with respect to the subject matter of the suit. *Bubis v. Blanton*, 885 F.2d 317, 321 n.1 (6th Cir. 1989). The former applies only when the Plaintiffs bear "equal fault to, or more fault than, the [D]efendant for the alleged wrong." *Antioch Litig. Trust v. McDermott Will & Emery, LLP*, 738 F. Supp. 2d 758 (S.D. Ohio 2010). The latter requires a showing that the party seeking relief engaged in "reprehensible conduct with respect to the subject matter of the action." *State ex rel. Coughlin v. Summit Cty. Bd. Of Elections*, 136 Ohio St. 3d 371, 373, 995 N.E.2d 1194, 1197 (2013).

The evidence construed in Plaintiffs' favor does not affirmatively establish either defense. As noted, there are significant questions of fact regarding the underlying transfer of funds and Babu's authority to transfer funds. Furthermore, even if those fact questions did not exist, Pendum has not identified any record evidence that Plaintiffs engaged in reprehensible conduct. Pendum cites Plaintiffs' giving the alleged thief, Babu, access to the TAB Bank account. There are factual disputes about Babu's authority with respect to the funds in the bank account, but Plaintiffs also took some steps to protect its account by hiring an accountant to monitor activities. Although Pendum argues "GTP Financial's conduct was more egregious than Pendum's," the Court cannot so conclude. A trier of fact could determine from the parties' actions that the parties are not at equal fault.

### 4. Effect of Plaintiffs' Settlement

Pendum argues that Plaintiffs have dismissed their claims against Babu with prejudice, and thus cannot establish that Babu owes them money. There is simply no basis for the Court to find summary judgment in favor of Pendum by virtue of the fact that Plaintiffs reached a settlement with Babu. Pendum cites no case law to support this position, and the Court rejects it.

### 5. Dismissal of GTP and Mirlisena

Finally, Pendum argues that either GT and Mirlisena or GTP and Mirlisena must be dismissed because they did not transfer funds to Pendum. In its Memorandum in Support of its Motion for Summary Judgment, Pendum initially argued that *GT* and Mirlisena should be dismissed. Pendum changed its position in its reply, asking that Mirlisena and *GTP* be dismissed. It is not clear to the Court whether Pendum concedes that the $1.1 million transfer came from GT's bank account. (*Compare* Doc. 146 at PageID 2491 *with* Doc. 160 at PageID 3802.) As the Court has noted, there is a question of fact over from which bank account the $1.1 million was transferred. Mirlisena asserts in his declaration the transfer came from a GT account, but the capital was provided to GT and GTP, both LLCs owned by Mirlisena. (Mirlisena Dep., Doc. 135 at PageID 1423.) Given the question of fact and conflicting stance by Pendum, first asserting dismissal of GT, then GTP, and both times of Mirlisena without pointing to any record evidence of lack of ownership of the funds transferred, the evidence before the Court is not sufficient to establish that one or more parties must be dismissed.

Accordingly, for all these reasons, Pendum's Motion for Summary Judgment is DENIED. The case will proceed to trial on the unjust enrichment claim.

### B. Babu's Motion for Summary Judgment

The Court now turns to Babu's Motion for Summary Judgment on the two claims asserted against it by Pendum, tortious interference with contract and tortious interference with a business relationship.

To prevail on a tortious interference with contract claim, Pendum must prove: "(1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) lack of justification or privilege; and (5)

resulting damages." *Taylor Bldg. Corp. of Amer. v. Benfield*, 507 F. Supp. 2d 832, 843 (S.D. Ohio 2007) (citing *Franklin Tractor Sales v. New Holland N. Am., Inc.*, 106 F. App'x 342, 344 n.1 (6th Cir. 2004)). A claim for tortious interference with a business relationship has similar elements, "but occurs when the result of the improper interference is not the breach of a contract, but the refusal of a third party to enter into or continue a business relationship with the plaintiff." *Id.* (citing *Franklin Tractor Sales*, 106 F. App'x at 344 n.1). That claim requires Pendum to prove "(1) the existence of a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) resulting damages." *Id.* (citing *Diamond Wine & Spirits, Inc. v Dayton Heidelberg Distrib. Co.*, 148 Ohio App. 3d 596, 604, 774 N.E.2d 775, 780 (2002)). Although Pendum's tortious interference claims survived Babu's Motion for Judgment on the Pleadings, the summary judgment standard requires more scrutinizing. Babu moves for summary judgment on the basis that Pendum cannot prove Babu *intentionally caused* the breach of contract between Pendum and EZ Tax, or, alternatively, the termination of the relationship of the two parties. The Court agrees.

Babu relies upon an absence of evidence to support Pendum's claims. Significantly, Pendum has failed to come forward with evidence that its contract with EZ Tax or its business relationship with EZ Tax has been terminated because of the $1.1 million payment Babu wired. Rather, Pendum has retained the $1.1 million dollars that Babu wired from GT's account. Pendum's response to Babu's motion is hypothetical conjecture, not identification of record evidence which presents a material dispute of fact. Pendum relies upon the Court's decision allowing its claims to go forward at the judgment on the pleadings stage and argues that its claims are premised on the *possibility* that *if* Pendum is found liable to Plaintiffs, *then* Pendum will not have been paid for the ATMs that it already delivered to EZ Tax and Ogbazion.

14

According to Pendum, in that case, "[t]he only damaged party *will be Pendum*, the party most distant from any misconduct and least able to protect itself from the alleged deceit. It is that injustice that Pendum seeks to prevent with its crossclaims." (Doc. 157 at PageID 3718–19) (emphasis added). Thus, the causation and damages it allegedly suffered are future-focused even by Pendum's own account. Pendum's if-then reasoning is insufficient at this stage in the litigation. There is no evidence Pendum has identified which establishes a question of fact on causation, or, for that matter, damages. Both claims are properly dismissed.[13]

## IV. Conclusion

For the foregoing reasons, Pendum LLC's Motion for Summary Judgment (Doc. 146) is DENIED, and Nirav Babu's Motion for Summary Judgment (Doc. 147) is GRANTED.

**IT IS SO ORDERED.**

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court

---

[13] The Court rejects Pendum's request that the Court dismiss its claims without prejudice. If Pendum choses to "refile" any claim, presumably it would be based on a new set of facts – for example, if the $1.1 million was returned.